ENRIQUE BÁEZ GARCÍA, demandante y apelado, *v.* ALEJANDRINA, MARÍA TRIFONA, conocida por TRINA, y SABÁS HONORÉ RIVERA, demandados y apelantes.

Núm. 7999.—*Sometido:* Junio 12, 1939. *Resuelto:* Febrero 1, 1940.

*Pascasio Fajardo Martínez,* abogado de los apelantes; *Enrique Báez García, pro se.*

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

El apelado solicita la desestimación del presente recurso por los siguientes motivos:

Los demandados radicaron su escrito de apelación el primero de abril de 1939. En moción presentada el 3 del mismo mes manifestaron que optaban por la exposición del caso y que a fin de poderla

preparar necesitaban la transcripción de la evidencia. Solicitaron una orden dirigida al taquígrafo para que éste preparara y entregara la transcripción. La corte declaró con lugar esta moción el 10 de abril y ordenó que se preparara la transcripción.

En otra moción archivada el 3 de abril los apelantes alegaron: que habían radicado una moción en que hacían constar que necesitaban la exposición del caso para perfeccionar su apelación y solicitaban una orden para que el taquígrafo preparara la transcripción de evidencia, la cual sería utilizada en la preparación de la exposición del caso; que de conformidad con las disposiciones de la Ley núm. 4 de 18 de marzo de 1925 (Leyes de 1925, pág. 109), dicha exposición del caso debía archivarse dentro de diez días contados a partir de. la radicación del escrito de apelación en abril 1, y que este período expiraba el día 10 del mismo mes; que el taquígrafo había informado al abogado de los apelantes que le sería imposible suministrar la transcripción antes de mediados del mes de mayo; y que como había mucha prueba documental, el letrado necesitaría por lo menos quince días para preparar la exposición del caso. Se solicitaba se concediera al taquígrafo una prórroga para preparar y entregar la transcripción. La corte concedió al taquígrafo una prórroga que vencería el 15 de mayo para preparar la transcripción.

La Ley núm. 4, intitulada "Ley para enmendar el artículo 356 del Código de Enjuiciamiento Criminal, y para otros fines", aprobada el 18 de abril de 1925 (Leyes de ese año, pág. 109) es aplicable a las apelaciones interpuestas contra sentencias dictadas en causas criminales.

El término para radicar la exposición del caso venció el 11 de abril. Los apelantes no habían solicitado una prórroga para radicar tal exposición, conforme provee el artículo 299 del Código de Enjuiciamiento Civil, según fué enmendado en 1919 (Ley núm. 81 de 1919, pág. 675). En mayo 15 los apelantes radicaron una moción intitulada "Moción de prórroga para radicar exposición del caso". En esta moción alegaban: que habían solicitado se ordenara al taquígrafo transcribiera sus notas taquigráficas a fin de poder los apelantes preparar la exposición del caso, solicitando a la vez que el período estatutario fuera prorrogado; que la corte concedió al taquígrafo hasta el 15 de mayo de 1939; que el letrado de los apelantes había solicitado del taquígrafo que preparara y entregara la transcripción de la evidencia, cosa que éste no había hecho, y que el término estaba próximo a vencer. En la moción se solicitaba una segunda prórroga de treinta días a partir del 14 de mayo y que vencería el 13 de junio

para preparar y entregar al letrado de los apelantes la transcripción de las notas taquigráficas. La corte declaró con lugar esta moción.

No se ha radicado la transcripción de los autos en este Tribunal dentro de treinta días contados a partir de la fecha en que se radicó el escrito de apelación.

Los apelantes se han opuesto a la moción del apelado basados en los fundamentos que aparecen a continuación:

Los apelantes habían solicitado se ordenara al taquígrafo que preparara la transcripción de la evidencia para ellos poder preparar y radicar la exposición del caso. Se habían solicitado y concedido dos prórrogas para dicho fin. Estas prórrogas no habían expirado. Los apelantes habían sido diligentes. La prórroga concedida al taquígrafo equivalía a una prórroga para que los apelantes radicaran su exposición del caso. El fin de un recurso de apelación justifica este criterio. Los requisitos esenciales son que un apelante sea diligente en la tramitación de su recurso y que esté dentro de los términos estatutarios. Si la parte apelante hace eso, no importa que se solicite la prórroga para el taquígrafo o para el apelante, toda vez que la ley no especifica quién ha de solicitar la prórroga ni a quién ha de concedérsele, y que la cuestión no es jurisdiccional. Que sea ello como fuere, los apelantes, tan pronto como se les llamó la atención a este asunto, subsanaron la omisión.

En una moción radicada en la corte de distrito los apelantes explicaron: que por inadvertencia habían hecho constar en su primera moción que se acogían al procedimiento indicado en la Ley núm. 4 de 18 de abril de 1925 (pág. 109) cuando lo cierto es que dicha ley reglamenta las apelaciones en causas criminales y la ley que rige las apelaciones en causas civiles es la Ley 70 de 9 de marzo de 1911 (pág. 238); que por inadvertencia igualmente los apelantes omitieron en dicha moción solicitar expresamente una prórroga del término para radicar la exposición del caso y limitaron su petición a solicitar una orden para que el taquígrafo preparara la transcripción de sus notas taquigráficas, ocasionando así un defecto en la resolución de abril 10 a ese respecto e iguales defectos subsanables en las siguientes mociones y resoluciones; que las omisiones e inadvertencias señaladas constituyen meras informalidades que una vez conocidas pueden y deben ser subsanadas por los tribunales, en bien de la justicia y para que los procedimientos queden encausados debidamente, de conformidad con la finalidad que tales procedimientos persiguen; que por la finalidad que se persigue a virtud de esta apelación, así como por la

ley reguladora de las apelaciones, y dados los términos precisos en que se encuentran redactadas las mociones y las órdenes a que las mismas dieron lugar, estas resoluciones deben ser interpretadas en el sentido de ordenar al taquígrafo que prepare la transcripción de sus notas taquigráficas y las entregue al letrado de los apelantes dentro del período estatutario, dentro de las prórrogas que puedan concedérsele o dentro del término para radicar la exposición del caso; y que el presente recurso se tramita amparado en la citada ley que autoriza las apelaciones en casos civiles y no en la que regula las apelaciones en causas criminales, como erróneamente se anuncia en la primera de las reseñadas mociones de los apelantes.

En esta moción los apelantes—de conformidad con el artículo 140 del Código de Enjuiciamiento Civil, basados en el caso de *Domínguez* v. *Fabián,* 35 D.P.R. 314, y habida cuenta de que los demandados han sido diligentes en los procedimientos de la apelación y en la consecución de prórrogas en su oportunidad, que han efectuado desembolsos, así como por la cuantía envuelta—solicitaron una orden *nunc pro tunc* al efecto de que, en el ejercicio del poder inherente de la corte y de conformidad con el artículo 140 del Código de Enjuiciamiento Civil, todas y cada una de dichas mociones y órdenes se consideren como enmendadas en el sentido de que los apelantes se acogen a la Ley de 1911 y que las prórrogas concedidas lo fueron para radicar la exposición del caso y no la transcripción taquigráfica, conforme allí se consigna. El proceder adoptado por la corte de distrito como resultado de esta moción se desprende de una copia certificada de la orden de la corte.

La corte de distrito, luego de exponer los hechos substancialmente, tal cual figuran en la moción de los apelantes, invocó en apoyo de su actuación, no sólo su facultad inherente para corregir sus propios autos, sino también los poderes conferídosle por el artículo 140 del Código de Enjuiciamiento Civil. La orden de la corte disponía que las resoluciones de abril 10 y 15 se entendieran redactadas *nunc pro tunc,* ''de modo que se le ordene al taquígrafo formular las notas taquigráficas y que las prórrogas conferidas lo fueron a los apelantes para radicar la exposición del caso, así como que se entienda que los apelantes se acogen a la Ley núm. 70 de 9 de marzo de 1911 y no a la que prescribe las apelaciones de casos criminales''.

██ Podría admitirse que esta orden no puede sostenerse como una mera corrección *nunc pro tunc* de un error oficinesco (*clerical*) cometido en las órdenes anteriores. Para los fines de esta opinión podría admitirse de igual modo que las órdenes anteriores difícilmente pueden ser interpretadas como prórrogas del término para radicar la exposición del caso. La cuestión es si la corte de distrito bajo el artículo 140 del Código de Enjuiciamiento Civil tenía facultad para exonerar a los apelantes de los efectos de estas órdenes, consideradas las mismas como prórrogas para que el taquígrafo transcribiera sus notas taquigráficas y entregara copia de la transcripción al letrado de los apelantes.

En *Pardo* v. *Pardo,* 19 D.P.R. 1188, la mayoría de este tribunal, conforme el mismo estaba constituído en 1913, resolvió, según se hace constar en el sumario, lo siguiente:

"Los preceptos de nuestro estatuto relativos al término para preparar una exposición del caso deben ser interpretados en sentido estricto.

"El artículo 140 del Código de Enjuiciamiento Civil no faculta a una corte de distrito para admitir una exposición del caso después de haber expirado el término legal. La palabra 'procedimiento' a que su refiere dicho artículo es un procedimiento en la corte sentenciadora y no abarca los procedimientos para perfeccionar una apelación."

La opinión señala ciertas diferencias insignificantes existentes entre nuestro Código de Enjuiciamiento Civil y el de California. Ninguna de estas ligeras diferencias ni ninguna disposición por parte de la corte a "considerar diligentemente los casos sometidos a su consideración", son suficiente motivo para negarse a seguir la interpretación dada al estatuto de California con anterioridad a la fecha de su adopción por nuestra Asamblea Legislativa. Existe más peso en otras partes de la opinión, tal cual la misma se aplicó a los hechos que la corte entonces tenía ante sí. En dicho caso la corte de distrito declaró sin lugar la demanda y la contrademanda en un pleito de divorcio. Ambas partes apelaron. El ma-

rido radicó ante este tribunal la transcripción de los autos, incluyendo una exposición del caso debidamente aprobada por el juez de distrito. La esposa no radicó transcripción y aparentemente nada hizo en la corte de distrito luego de archivar ella su escrito de apelación. Hasta el momento de presentarse una moción para desestimar su recurso, ella había descansado enteramente en la exposición del caso y en la transcripción de autos preparadas y radicadas por el marido. En lo que a ella y a su recurso de apelación concernía, no había habido moción, orden o procedimiento en la corte de distrito con posterioridad a la radicación del escrito de apelación.

Fué bajo estas circunstancias que la mayoría del tribunal dijo:

"... La omisión de una parte en presentar una exposición del caso a su debido tiempo no es una 'sentencia, orden u otro procedimiento dictado contra ella.' Evidentemente que el procedimiento sería algo parecido al de una orden, sentencia o decreto."

Con lo anterior quedó resuelto el caso. Otras expresiones contenidas en la opinión fueron *obiter dicta.* Fué superfluo decir: "La Corte Suprema de California al tratar de cumplir con el supuesto espíritu de la ley infringió su letra," y "todo el espíritu del artículo 140 revela que el procedimiento era uno que podría surgir en el ejercicio de la jurisdicción ordinaria de la corte inferior y no es de aplicación a los procedimientos para perfeccionar la apelación."

El Juez Asociado Sr. Del Toro estuvo conforme con la resolución. El Juez Asociado Sr. MacLeary no intervino en la decisión.

Opiniones por mayoría en casos posteriores han seguido los *dicta* en *Pardo* v. *Pardo*. Agregan poco a lo que se dijo *arguendo* en dicho caso. Véanse: *Fajardo Sugar Co.* v. *Santiago et al.* (resuelto el mismo día—19 D.P.R. 1193); *Ex Parte Deliz et al.* v. *Franco,* 21 D.P.R. 526; *Díaz* v. *P. R. Ry. Light & Power Co.,* 32 D.P.R. 95; *Brown* v. *Peña & Balbás,* 35 D.P.R. 483.

En *Alvarez et al.* v. *Corte de Distrito,* 36 D.P.R. 925, este tribunal, por voz del Juez Presidente Sr. Del Toro, dijo:

"Repetidamente ha resuelto este tribunal que el artículo 140 del Código de Enjuiciamiento Civil no es aplicable a un caso como éste, careciendo por tanto la corte de distrito de facultad para conceder un nuevo término.

"Bastará citar el caso de *Díaz* v. *The P. R. Ry. Light and Power Co.,* 32 D.P.R. 95, 99, en el que se dijo:

" 'Los fundamentos que hemos tenido para desestimar esta apelación han sido consignados en una opinión anterior donde se cita el caso de *Pardo* v. *Pardo,* 19 D.P.R. 1188.

" 'En el mismo tomo y en el caso de *Fajardo Sugar Co.* v. *Santiago,* 19 D.P.R. 1193, ratificamos nuestro criterio de que el artículo 140 del Código de Enjuiciamiento Civil no tenía ninguna aplicación a los pliegos de excepciones y otros documentos semejantes y también llamamos la atención al hecho de que el artículo 299 del Código de Enjuiciamiento Civil como fué enmendado en el año 1911 no era semejante a ninguna disposición del Código de Enjuiciamiento Civil de California.

" 'El abogado insiste ahora en llamarnos la atención hacia la teoría de que el artículo 140 del Código de Enjuiciamiento Civil fué tomado de California y por tanto, como es de presumirse, con la interpretación que se le ha dado en ese Estado. Discutimos algunas de las diferencias de práctica en el caso de *Pardo* v. *Pardo,* supra. Podemos agregar que la regla de interpretación invocada está sujeta a un número de excepciones y una de ellas es cuando la interpretación que se le da en el Estado de origen está en conflicto con el claro significado del estatuto. *Whitney* v. *Fox,* 166 U. S. 637, 647. Según indicamos en el caso de *Pardo* v. *Pardo,* supra, la Corte Suprema de California no observó el claro significado de las palabras empleadas. Además, por la apelación es la Corte Suprema de Puerto Rico la que adquiere jurisdicción sobre un caso y cuando se invoca un privilegio extraordinario es esta corte la que tiene la facultad de concederlo, suponiendo que la facultad existe. A la corte inferior se le confiere específicamente sólo el derecho de prorrogar el término. No se le confiere ninguna facultad para crear un nuevo término.'

"El criterio de esta corte sobre la materia se ha sustentado siempre por mayoría, disintiendo el Juez Sr. Hutchison y el que emite esta opinión.

"En una oposición presentada por la parte contraria en el pleito a la que inició el *certiorari,* se argumenta ampliamente en pro de la facultad de la corte de distrito citándose varios casos de California. Sin embargo, la mayoría de la corte que ha tenido ocasión de reafirmar su criterio en casos aun más recientes que el citado, no ha sido convencida de que deba variarlo, y subsistiendo, sólo cabe una resolución: la de anular la orden de 5 de marzo último por haber sido dictada sin jurisdicción y en tal virtud se anula."

En *Machuca* v. *Municipio,* 41 D.P.R. 659, dijimos:

"...Las decisiones de esta Corte Suprema sobre la materia resuelven que la corte de distrito no tiene autoridad para conceder en estos casos nuevos términos, y que tal autoridad corresponde a esta Corte Suprema."

En *García* v. *Palatine Ins. Co., Ltd.,* 42 D.P.R. 978, 979, dijimos:

"...Aun si la corte inferior tenía discreción al amparo del artículo 140 del Código de Enjuiciamiento Civil—y este tribunal ha resuelto lo contrario en *Pardo* v. *Pardo,* 19 D.P.R. 1188, y *Díaz* v. *P. R. Ry. Light & P. Co.,* 32 D.P.R. 95—este poder discrecional, según hemos resuelto, no fué invocado en este caso."

Desde que se resolvieron estos casos el personal que constituye la corte ha variado. La cuestión se suscita ahora por primera vez ante el tribunal tal cual está constituído al presente. Luego de considerar y discutir nuevamente el asunto hemos llegado a la conclusión de que los casos resueltos hasta ahora deben ser revocados.

En 8 Bancroft's Code Practice and Remedies, pág. 9027, sec. 6832, hallamos:

"Una parte puede ser exonerada de los efectos de haber dejado de notificar, archivar o presentar un pliego de excepciones dentro del término prescrito en un estatuto que autoriza a una corte, en la forma que estimare justa, para eximir a una persona de los efectos de una sentencia, orden u otro procedimiento que se hubiese dictado contra ella, por causa de equivocación, inadvertencia, sorpresa o excusable negligencia. La autoridad conferida por el estatuto para conceder el remedio puede ejercitarse tan sólo cuando se presenta una solicitud fundamentada que demuestre equivocación,

inadvertencia, sorpresa o excusable negligencia, en que la corte pueda basar sus conclusiones en pro o en contra de la solicitud; la mera conclusión en una declaración jurada al efecto de que el letrado dejó de solicitar una prórroga por inadvertencia y negligencia excusable, es insuficiente para invocar la jurisdicción de la corte.

"Cualquier duda que exista debe ser resuelta en favor de la solicitud a fin de celebrar una vista sobre los méritos, siempre que se presente un caso adecuado bajo el estatuto; y una corte de apelaciones estará menos inclinada a revocar una resolución declarando con lugar tal solicitud que una negándola. Pero la discreción de la corte sentenciadora debe basarse en sus propias inferencias lógicas y razonables, de los hechos presentádosle en el caso específico que está ante ella. El remedio puede concederse condicionalmente."

En 4 C.J.S. pág. 1364, sec. 869, se dice:

"La corte sentenciadora puede eximir a una parte de los efectos de haber dejado de radicar un pliego de excepciones dentro del término prescrito, al radicarse la oportuna solicitud en que se demuestre que tal omisión se debió a equivocación, inadvertencia, sorpresa o negligencia excusable.

"Expirado el período estatutario para la aprobación del pliego de excepciones, sin que el mismo se haya archivado, no se concederán nuevas prórrogas—según algunos estatutos—hasta que la parte apelante haya sido eximida de tal omisión por orden de la corte sentenciadora, luego de radicar el apelante la oportuna solicitud y de demostrar mediante declaración jurada o con la prueba correspondiente, que existe una buena causa para la concesión del remedio. La solicitud debe presentarse dentro del término prescrito por el estatuto después de la omisión y deberá ser notificada al letrado de la parte contraria; y se ha resuelto que tal remedio no será concedido una vez vencido el término para apelar.

"Tal solicitud se dirige a la sana discreción de la corte sentenciadora. El ejercicio de esta discreción se basará en las inferencias razonables que la corte haga de los hechos presentádosle en el caso específico y esa discreción, en ausencia de un manifiesto abuso, no será alterada por la corte de apelaciones."

La sección 293 de 2 Cal. Jur., pág. 563, lee:

"El artículo 473 del Código de Enjuiciamiento Civil de California provee:

" 'Podrá la corte...en la forma que estimare justa, eximir a alguna persona o a sus representantes legales, de los efectos de una

sentencia, orden u otro procedimiento que se hubiese dictado contra ella por causa de equivocación, inadvertencia, sorpresa o excusable negligencia.'

"Bajo este artículo ha quedado bien establecida la regla de que está enteramente dentro de la facultad de la corte sentenciadora, al radicársele la oportuna solicitud debidamente fundamentada, eximir a una persona de los efectos de haber dejado de notificar el pliego de excepciones dentro del término estatutario, cuando la aprobación del pliego se basa en ese motivo, y luego aprobar el mismo. En casos apropiados la corte inferior puede hacer que su orden concediendo el remedio esté condicionada. Si no se ha presentado una petición solicitando se exima al apelante de los efectos de tal omisión, y la radicación de la misma sólo se ha anunciado, no puede decirse que existe un procedimiento pendiente para la concesión de ese remedio.

"La cuestión relativa a si los hechos justifican el remedio a tenor del artículo 473 del Código de Enjuiciamiento Civil por haberse dejado de notificar o presentar un pliego de excepciones, es principalmente una a resolver por la corte sentenciadora, y esa corte está investida de amplia discreción en tales casos, aunque su decisión a ese respecto es apelable. En su consecuencia, una resolución concediendo ese remedio no será alterada en apelación a menos que se desprenda claramente que la corte inferior cometió un abuso craso de discreción al dictarla. Aunque lo correcto de la resolución puede ponerse en tela de juicio, no obstante la corte de apelaciones no sustituirá su propio criterio ni despojará a la corte inferior del poder discrecional de que está investida. Esto es así, ora se declare con o sin lugar la solicitud. En realidad en casos en que existe duda la corte debe resolverla en favor de la solicitud a fin de que puedan presentarse todos los méritos del recurso. Además, como la corte inferior tiene amplia discreción, el tribunal de apelación no le ordenará que conceda el remedio a través de un auto de *mandamus*."

En la sección 6832 de Bancroft's Supplement, encontramos:

"Las decisiones más recientes de California han modificado la regla anterior, y hoy en día, es cosa resuelta que el proceder de la corte sentenciadora al aprobar los autos equivale a la concesión del remedio especificado en el artículo 473 del Código de Enjuiciamiento Civil, por haberse dejado de notificar y radicar el pliego de excepciones."

En California "la aprobación de un pliego de excepciones es un 'procedimiento' dentro del significado de las disposiciones del artículo 473." *Pollitz* v. *Wickersham,* 150 Cal. 238; *Lukes* v. *Logan,* 66 Cal. 33.

En *George B. Leavitt Co.* v. *Couturier,* 23 P. (2d) 1101, la Corte Suprema de Utah dijo:

"Es ley ya establecida en esta jurisdicción que una corte de distrito puede, de conformidad con las disposiciones de los Estatutos Revisados de Utah de 1917, sección 6619, al radicarse la oportuna solicitud, debidamente fundamentada, exonerar a una parte de los efectos de haber dejado de mantener vivo el término para preparar, notificar y radicar un pliego de excepciones."

En el caso de *Morgan* v. *Oregon R. R. Co.,* 74 P. 523, el mismo tribunal dijo:

"Las cuestiones que han de considerarse en esta apelación han sido presentadas por medio de un pliego de excepciones, y la parte apelada ha presentado una moción solicitando se elimine dicho pliego basada en que el mismo no fué notificado al abogado del demandante, dentro del término de treinta días contado a partir de la fecha en que se declaró sin lugar la moción de nuevo juicio, tal cual dispone el estatuto. Sección 3286, Estatutos Revisados de 1898. Se insiste en que la corte inferior no tenía autoridad para aprobar el pliego y eximir al apelante de las consecuencias de haber omitido notificarlo oportunamente, ya que el mismo no fué notificado hasta 32 días después de declararse sin lugar la moción de nuevo juicio. El apelante sostiene que la corte tenía facultad bajo el artículo 3005, de los Estatutos Revisados de 1898, para conceder el remedio. Ese artículo, entre otras cosas, dispone: 'Podrá la corte en bien de la justicia y en los términos que fuesen adecuados, . . . eximir a alguna persona o a sus representantes legales de los efectos de una sentencia, orden u otro procedimiento que se hubiese dictado contra ella, por causa de equivocación, inadvertencia, sorpresa o excusable negligencia.' Esta disposición, en términos expresos, confiere a una corte la facultad de eximir a una parte de cualquier 'procedimiento que se hubiese dictado contra ella, por causa de equivocación, inadvertencia, sorpresa o excusable negligencia.' Dentro del significado y espíritu de ese precepto, la aprobación de un pliego de excepciones es un procedimiento, al igual que lo es la objeción a ese pliego y la moción en que se solicita que el mismo no sea tomado en considera-

ción por no haber sido notificado al letrado de la parte apelada dentro del término especificado en el estatuto. Por tanto, la corte tenía la facultad discrecional de conceder el remedio solicitado, al presentársele la debida solicitud; y creemos que el caso aquí presentado era suficiente para que el apelante tuviera derecho al remedio solicitado. Nada hay que demuestre un abuso de discreción por parte de la corte. La discreción en este caso se ejercitó de acuerdo con el contexto y espíritu del estatuto y este tribunal no alterará esa discreción. La Corte Suprema de California se ha pronunciado en idénticos términos en relación con un estatuto similar. *Stonesifer* v. *Kilburn*, 94 Cal. 33, 29 Pac. 332. *Scott* v. *Glenn*, 97 Cal. 513, 32 Pac. 573.''

Véase también el caso de *Davis* v. *Lynham*, 247 P. 294.

De la opinión emitida en un caso de Idaho, *Richardson* v. *Bohney*, 109, P. 727, tomamos el siguiente extracto:

''Por tanto, se nos presenta la cuestión de si el juez de la corte inferior abusó de su discreción al negarse a aprobar el pliego de excepciones. Habiendo la corte inferior hallado que el pliego de excepciones no fué notificado oportunamente por equivocación, inadvertencia, sorpresa y excusable negligencia de los abogados del demandado, somos del criterio que era el deber de la corte inferior aprobar dicho pliego. Este tribunal resolvió en el caso de *Sandstrom* v. *Smith*, 11 Idaho 779, 84 P. 1060, que la prueba allí presentada no era suficiente para que el apelante pudiera acogerse a los preceptos del artículo 4229 de los Estatutos Revisados, indicando con ello que si la prueba hubiese bastado, la parte hubiera podido acogerse a las disposiciones de ese artículo. Sin embargo, en dicho caso no se levantó la cuestión de si el procedimiento para aprobar un pliego de excepciones caía o no dentro de las disposiciones del referido artículo 4229. El artículo 473 del Código de Enjuiciamiento Civil de California es idéntico al 4229 de los Códigos Revisados, y en varios casos de California la Corte Suprema ha resuelto que la aprobación de un pliego de excepciones es un procedimiento dentro del espíritu de dicho artículo. *Pollitz* v. *Wickersham*, 150 Cal. 238, 88 P. 911; *Lukes* v. *Logan*, 66 Cal. 33, 4 P. 883. Creemos que la preparación y aprobación de una exposición del caso o pliego de excepciones, es un 'procedimiento' dentro de las disposiciones del referido artículo 4229, y que sus preceptos son aplicables a la preparación y aprobación de una exposición del caso o pliego de excepciones. Siendo ello así y habiendo la corte llegado a la conclusión de que el haber dejado los ape-

lantes de notificar su pliego de excepciones dentro del término prescrito, se debió a la equivocación, sorpresa, inadvertencia y negligencia excusable de uno de los letrados de los demandados, la corte cometió error al no aprobar el referido pliego de excepciones y la orden negándose a hacerlo así debe ser revocada y devuelto el caso. Si la corte inferior por inadvertencia cometió un error en dicha orden, ella tenía derecho a corregirlo mientras tuviera jurisdicción del asunto; pero al apelarse de la orden, dicha corte inferior perdió su jurisdicción y no la readquiere hasta que el caso le sea devuelto.''

La corte de distrito, de conformidad con el artículo 140 del Código de Enjuiciamiento Civil tenía facultad para excusar la omisión de los apelantes, por equivocación, inadvertencia o negligencia excusable, de solicitar—en sus mociones para que se dictara una orden dirigida al taquígrafo para que preparara y entregara la transcripción y para que se le concedieran prórrogas para preparar y entregar la misma— un término para radicar la exposición del caso. También tenía facultad para eximir a los apelantes de los efectos de las resoluciones en que se ordenaba al taquígrafo que preparara y entregara la transcripción y se prorrogaba el término para que el taquígrafo preparara y entregara tal transcripción, sin ampliar el término dentro del cual los apelantes pudieran preparar y archivar una exposición del caso.

*Debe declararse sin lugar la moción de desestimación presentada por el apelado.*

El Juez Asociado Sr. Wolf no está conforme con la opinión, pero sí, por otros motivos, con la resolución.*